IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**MARSHALL HART**                                                                                          **PLAINTIFF**

**v.**                                                     **CAUSE NO. 1:11CV83 LG-RHW**

**JAMIE HOWARD**                                                                   **DEFENDANT**

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY

BEFORE THE COURT is the Plaintiff's Motion [53] In Limine to Exclude Testimony of Defendant's Experts Dr. Winston Capel and Mark Dunston. The Defendant has responded. After due consideration of the briefing and the relevant law, it is the Court's opinion that Dr. Winston Capel's opinions meet the requirements of *Daubert* and will be allowed. However, the opinions of Mark Dunston will not assist the jury in determining any material issue, and therefore will not be admitted. Accordingly, the Plaintiff's Motion is granted in part and denied in part.

### BACKGROUND

This case concerns an altercation between two patrons at the Beau Rivage Resort in Biloxi, Mississippi, in March, 2010. Plaintiff Hart contends that the Defendant inflicted serious injuries to his head during the incident, and he continues to suffer from hearing loss and other residual effects. The incident was videotaped. Hart's claims are for assault and battery, and intentional infliction of emotional distress.

In defending against the claims, Defendant Howard has engaged neurosurgeon Dr. Winston Capel, and Assistant Chief of the Ocean Springs Police Department Mark Dunston. Hart objects to the introduction of opinion testimony from either of these experts pursuant to Federal Rule of Evidence 702.

DISCUSSION

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue. A court is charged with a "gatekeeping function" to ensure expert testimony is both reliable and relevant. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). Reliability is analyzed under Rule 702, which requires that: (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. FED. R. EVID. 702. Further, the expert witness must be qualified "by knowledge, skill, experience, training, or education. . . ." *Id*. A court must exclude an expert witness "if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999).

1. **Dr. Winston Capel**:

Hart argues that Dr. Capel is not qualified to render an opinion in this case, and in any event, his opinion is not based on sufficient data to be admissible. Capel is a neurosurgeon whose specialty is spinal disorders and injuries. Hart contends that his injuries were to his head, not his spine, and therefore Dr. Capel's expertise

is not relevant to the issues in this case. However, Dr. Capel's opinion testimony is not inadmissible for this reason. A "witness qualified as an expert is not strictly confined to his area of practice, but may testify concerning related applications; 'a lack of specialization does not affect the admissibility of the opinion, but only its weight.'" *Meadowcrest Living Ctr., LLC v. Hanover Ins. Co.*, No. 06-3210, 2008 WL 2959707, at *6 (E. D. La. July 30, 2008) (citing *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1100 (10th Cir. 1991)); *Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 167, 176-77 (5th Cir. 1990), abrogated on other grounds by *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir.1996) (permitting mechanical engineer who never designed a press brake to testify as to safety of brake design). "[I]t is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 782 (3d Cir. 1996) (accepting more general qualifications in holding that a treating physician did not have to practice a particular specialty in order to testify concerning certain matters); *see also Gaydar v. Sociedad Instituto Gineco-Quiruigico y Plaintificacion Familiar*, 345 F.3d 15, 25 (1st Cir. 2003) (it would be reversible error to exclude a physician's expert testimony, in a case involving alleged malpractice during an abortion, for the sole reason that his specialty was something other than gynecology or obstetrics). Accordingly, Dr. Capel will be allowed to give medical opinion testimony.

Hart's objection to the sufficiency of the information Dr. Capel relied upon in reaching his opinions goes to the reliability of Dr. Capel's testimony.  Hart argues that Capel has relied solely on the report of the emergency room physician who treated Howard immediately after his injury.  In support, Hart cites Capel's deposition testimony, in which he states "[t]he basis for my – my opinion really comes from the primary evaluators . . . [t]he emergency room physicians." (Pl. Mot. Ex. E, ECF No. 54-5).

Hart supplied only one page of Dr. Capel's deposition testimony.  Howard has attached the entire deposition to his response.  The deposition is short - consisting of only ten pages - because it was begun ten minutes before Hart's counsel stated she must leave to meet workers at her home to fix her sprinkler system. (Def. Resp. Ex. C 8:16-21, ECF No. 55-3).  Although counsel attempted to immediately obtain a date to continue the deposition, Dr. Capel could not confirm his schedule at the time. (*Id.* at 8-9).  According to Howard, Hart's counsel later did reschedule the deposition, but cancelled it.  Thus, Dr. Capel's deposition has never been completed.

The deposition testimony that does exist is ambiguous about what Dr. Capel reviewed beyond the Emergency Room records.  He stated, "I have reviewed mainly the ER records from the first evaluating hospital. . . . And I recently saw an ENT note from the evaluating ear, nose and throat specialist.  Those are the – and I've read radiology reports and things like that." (*Id.* at 5).  He had read the recent report from Ledbetter, a neurologist, but not Ledbetter's initial report. (*Id.* at 6).  He had not read reports from the ENT. (*Id.*).  He did not recall if he had read the

records of Dr. Stephen Enrich.  (*Id.* at 7).

Dr. Capel's opinion, in its entirety is:

> I have reviewed the available medical records pertaining to the assault that took place on March 5, 2010.  The patient presented at Biloxi Regional Medical Center ER with a "questionable loss of consciousness," had a normal neurological exam with a cranial CT negative for hematoma or skull fracture.  Patient did have a small fracture of the maxilla.  There was no clinical evidence of basilar skull fracture.  Patient was discharged to home and not admitted to the hospital.
>
> With the above facts being what they are, I would not classify the head injury as severe but mild in magnitude.

(Def. Resp. Ex. 2 to Ex. C, ECF No. 55-3).

Dr. Capel's review of the Emergency Room records is sufficient to allow him to draw a conclusion about the severity of Hart's injury upon his presentation to the Emergency Room.  His opinion testimony on this issue is reliable and will be allowed.

**2.  Mark Dunston**:

Howard has engaged Assistant Police Chief Mark Dunston to offer expert testimony in the use of force and self-defense.  After discussing what he saw on the videotape of the incident and the Mississippi statute regarding the use of force in self defense, Dunston concluded that "[w]hile Mr. Howard was not forced to use deadly force to counter Mr. Hart's assault, the lesser use of empty hands tactics would, in my opinion, be justified."  (Def. Resp. Ex 2 to Ex. F, ECF No. 55-6).  He based this opinion on "current, generally accepted training, investigative and operational procedures in the law enforcement profession, Mississippi statutes, and

my experience and training as a law enforcement officer, executive, and international trainer." (*Id.*). Hart argues that Dunston's testimony about the acceptable use of force by law enforcement relates to an industry standard, which is not at issue here because neither party is a law enforcement officer. Instead, the jury will be asked to determine whether Howard was reasonable, as that term is defined in Mississippi law, in his use of force for self-defense.

The issue of reasonableness is generally not a proper subject for expert testimony because "the question of reasonableness is quintessentially a matter of applying the common sense and the community sense of the jury to a particular set of facts and, thus, it represents a community judgment." *Wells v. Smith*, 778 F. Supp. 7, 8 (D. Md. 1991). Because jurors are capable of determining whether the use of force in self-defense is reasonable, expert testimony bearing on that issue is generally not admissible. *See United States v. Ruoco*, 765 F.2d 983, 995 (11th Cir. 1985). It appears that rather than providing specialized knowledge, Dunston will be "giving knowledge to a jury about something the jury knows as well as anyone else, namely, the reasonableness of the victim's fear of imminent serious danger." *Socha v. Wilson*, 477 F. Supp. 2d 809, 821 (N. D. Ohio 2007). The Court finds that Mark Dunston's proposed opinion testimony would not be helpful to the jury. Dunston will not be allowed to give expert opinion testimony on the issue of use of force and self-defense.

**IT IS THEREFORE ORDERED AND ADJUDGED** that Plaintiff's Motion [53] In Limine to Exclude Testimony of Defendant's Experts is **DENIED** in respect

to Dr. Winston Capel and **GRANTED** in respect to Mark Dunston.

**SO ORDERED AND ADJUDGED** this the 23rd day of July, 2012.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE
